IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNA KAY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05CV561-SRW |
| | ) | (WO) |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Donna Kay Jackson brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On April 2, 2003, plaintiff filed an application for Supplemental Security Income benefits. On June 1, 2004, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on August 10, 2004. The ALJ concluded that plaintiff suffered from the severe impairments of "lumbar degenerative disc disease, cervical degenerative disc disease, irritable bowel syndrome/Crohn's disease, hypertension and anxiety." (R. 27). He found that plaintiff's

impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform her past relevant work. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On April 28, 2005, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that the ALJ's decision that she can return to her past relevant work is not supported by substantial evidence, that the ALJ failed to adequately develop the record, and that he erred by rejecting the opinion of her treating physician.

As noted above, the ALJ found that plaintiff suffers from "irritable bowel syndrome/Crohn's disease." Plaintiff argues that the ALJ failed to develop the record fully because he did not order medical records from Dr. Bloom, a gastroenterologist at the University of Alabama in Birmingham who treated plaintiff for Crohn's disease. Plaintiff cites the record at pages 168, 171, 214, 216, 263 and 264 as the documentation demonstrating that the ALJ had an affirmative duty to order Bloom's records. (Doc. # 11, p. 14). However, in each and every instance identified by plaintiff, the record does not show that plaintiff was treated by Dr. Bloom. Instead, the records reflect that plaintiff either requested or received a referral from her doctor for further evaluation. There is no indication in the records cited by plaintiff or in subsequent treatment records that plaintiff actually attended any appointment with Dr. Bloom. Additionally, although plaintiff relies on her irritable bowel syndrome or Crohn's disease as a basis for her disability application, she did not, at any point, list Dr. Bloom as a physician from whom she had received treatment. (See R. 95-101; 144-50). Finally, as the Commissioner notes, plaintiff's attorney confirmed to the ALJ at the administrative hearing that the record was then complete, as far as she could tell. (R. 314). The ALJ has a basic duty to develop the record fully and fairly in every case. Cowart v. Schweiker, 662 F.2d 731, 735-36 (11th Cir. 1981). This obligation exists even when the

claimant is represented by counsel. Id. However, under the circumstances presented in this case, the ALJ did not fail in his duty to develop the record.

Plaintiff further argues that the ALJ erred by failing to credit the opinion of her treating physician, Dr. Charles Wood. Dr. Wood's opinion is set forth in a physical residual functional capacity questionnaire completed by Dr. Wood on May 22, 2004, which plaintiff's counsel provided to the ALJ at the hearing. (Exhibit 17-F, R. 296-300, 304). In this questionnaire Dr. Wood indicates, *inter alia*, that plaintiff can stand or walk only about two hours in an eight-hour workday, needs to be able to take unscheduled ten-minute breaks every two hours to be able to shift positions at will; that she can lift ten pounds frequently, twenty pounds occasionally, and fifty pounds rarely; and that she is limited to occasional twisting, stooping, crouching, and climbing of ladders or stairs. He estimated that she should be absent from work about three days per month as a result of her impairments or treatment. (R. 296-300). At the hearing, the vocational expert testified that the limitations listed by Dr. Wood would not be consistent with competitive employment.

> The opinion of a treating physician . . . "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). [The Eleventh Circuit] has concluded "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. Id. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons. Id.

Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). The ALJ did not credit the functional limitations listed by Dr. Wood, finding them to be inconsistent with Dr. Wood's own medical treatment and progress notes and not supported by objective findings. The ALJ also noted that the listed limitations were inconsistent with plaintiff's report of her daily

activities to Dr. Jacobs, the consultative psychologist. The ALJ also cited the report of the consultative examining physician, Dr. Crawford, that plaintiff is able to carry on her life as normal and possesses the usual work-related activities. (R. 28).

Plaintiff contends that her need to have the flexibility to take frequent breaks to use the restroom as frequently as needed is the limitation which precludes her from working on a regular and continuing basis. (Doc. # 11, p. 9; see also id. at p. 4 ("[T]he limitations listed by Dr. Wood that would prevent Ms. Jackson from working on a regular and continuing basis are non-exertional limitations related to her irritable bowel syndrome/Crohn's Disease[.]")). Plaintiff filed the present application in April 2003. Dr. Wood's treatment notes for the months preceding plaintiff's application reflect that her irritable bowel syndrome had responded to treatment by medication with Zelnorm, which had been "very beneficial." (R. 216, 11/21/02 treatment note ("The Zelnorm has been very beneficial for her as she has had decreasing bloating, her bowel movements have been more regular, and she doesn't have the cramping abdominal pain anymore."); R. 215, 2/21/03 treatment note ("States that Zelnorm has been actually very beneficial to her as far as her irritable bowel syndrome.")). Plaintiff experienced a resurgence in symptoms in May 2003, the month after her application was filed. (R. 263-64, treatment notes for 5/5/03 and 5/17/03). However, Dr. Wood's treatment notes for June 5, June 10 and June 19, 2003 do not indicate any complaints of IBS symptoms; his note for July 17, 2003 again reflects that her "[i]rritable bowel syndrome symptoms are controlled fairly well with the Zelnorm." (R. 262-64). On August 18, 2003, plaintiff reported "multiple episodes of diarrhea" (R. 262) and on September 15, 2003, Dr. Wood's

note states, "She's had melena."[1]  Treatment notes for examinations on October 6, November 3, and November 25, 2003 and January 19, 2004 include no complaints of irritable bowel syndrome symptoms and all expressly state that plaintiff has had no diarrhea.  (R. 259-61).  The January 19 note states, "Irritable bowel syndrome is well controlled on Lomotil."  On February 16, 2004, Dr. Wood noted that "[h]er irritable bowel syndrome has been pretty well controlled, eating well.  No more diarrhea noted.  She did have a bout, which is now improved."  (R. 259).

In his physical residual functional capacity questionnaire, when asked to describe limitations which would affect the patient's ability to work at a regular job on a sustained basis, Dr. Wood responded, "Pt mainly with severe cramping abdominal pain."  (R. 300).  Dr. Wood's treatment notes demonstrate that plaintiff's irritable bowel syndrome symptoms were generally well-controlled with medication.  The limitations due to plaintiff's irritable bowel syndrome set forth by Dr. Wood in the questionnaire are, as the ALJ noted, inconsistent with his treatment notes.

The exertional limitations set forth by Dr. Wood limited plaintiff to sedentary or light work, apparently due to her back pain.  See 29 C.F.R. § 416.967.  However, within the questionnaire, Dr. Wood states that plaintiff's lower back pain is 5 of 10, but "better [with] pain medication," and that he treats her with such medication.  (R. 296).  The ALJ noted Dr. Wood's report that plaintiff's pain was well-controlled with medication.  (R. 28; see also R. 215, 259, 261).

---

[1] Melena is "the passage of dark-colored, tarry stools, due to the presence of blood altered by intestinal juices." *Stedman's Medical Dictionary* (26th ed.) at 1082.

The plaintiff points to the results of an MRI performed on June 4, 2003 which showed spur formation at C5/C6 and herniation of the L1/L2 disc (R. 255-56).  She argues that the ALJ ignored this evidence supporting Dr. Wood's assessment and that he improperly relied on consultative examinations also conducted in June 2003 because the examiners did not review the results of the MRI.  Dr. Wood's treatment note for June 10, 2003, six days after the MRI, reflects that he was referring plaintiff to a neurosurgeon in Dothan.  (R. 263).  On July 3, 2003, plaintiff was examined by Dr. Woodham, a neurosurgeon.  Dr. Woodham stated that plaintiff "is not terribly reliable and her review of systems is virtually positive, and so she seems somewhat suggestible on my examination." He concluded, "It seems that the exam is unremarkable; yet she has a host of complaints."  (R. 229-30). He stated,

> I told [her] we would try a facet joint injection bilaterally at C5-C6 and lumbar diskography at the L1-2 area.  If the cervical injection is beneficial, then we would have a hopeful answer that cervical disk surgery would help her and the diskography were positive, we could offer her stabilization procedure.  I am hoping that these will be negative.

(R. 230).   There is no indication in the record of the results of either of these procedures. Dr. Wood's treatment notes reflect continued treatment for neck and back pain. However, his note for February 16, 2004 reads, "She states that her pain is actually doing much better on the current medications and would not like to have surgery at this time."  (R. 259).

The ALJ further notes that the limitations imposed by Dr. Wood are inconsistent with the report of Dr. Jacobs, the consultative psychologist, stating, "Dr. Jacobs' report indicates that the claimant stated that she spends most of her time cleaning her house and rearranging furniture, after which she 'lies out by the pool.'" (R. 28).  Dr. Jacobs reports that "[t]he

7

claimant spends approximately ten hours per day cleaning her house," that "[s]he revealed that as a rule, she will spend most of her day cleaning her house or rearranging furniture," that she "spends virtually all of every day cleaning her house," and that "[a]fter cleaning the house, she goes to the pool and lies out in the sun."  (R. 224A, 226, 227).  The ALJ's conclusion that the limitations imposed by Dr. Wood are inconsistent with plaintiff's activities as set forth in Dr. Jacobs' report is supported by substantial evidence.[2] The reasons articulated by the ALJ for discrediting the limitations set forth by Dr. Wood are supported by substantial evidence, and demonstrate good cause for rejecting the opinion.  Accordingly, the ALJ did not err by failing to credit the residual functional capacity assessment provided by Dr. Wood.

Dr. Willis Crawford, the consultative examiner, determined that plaintiff is "able to carry on her life as normal"  (R. 223) and that she "does possess the usual work-related activities such as sitting, standing, walking, lifting, carrying, and handling objects, hearing, speaking, and traveling. (R. 222).  Plaintiff argues that this assessment does not affirmatively indicate that plaintiff can perform these activities at the medium level of exertion. (Doc. # 11, p. 10).  However, read as a whole, the report can fairly be interpreted to mean that Dr. Crawford found no exertional functional limitations.  Additionally, the neurosurgeon who examined plaintiff after her MRI found her physical examination to be "unremarkable."  He stated no limitations of function.  (R. 230).  The ALJ's assessment of plaintiff's residual functional capacity is supported by substantial evidence.

---

[2] At the hearing, plaintiff denied telling Dr. Jacobs that she rearranges furniture or that she lies by the pool.  (R. 330).  The ALJ was nevertheless entitled to rely on the report.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. A separate judgment will be entered.

Done, this 29th day of December, 2006.

>  /s/ Susan Russ Walker
> SUSAN RUSS WALKER
> UNITED STATES MAGISTRATE JUDGE